Robertson, Ch. J.
The case before us is to be considered, so far as the plaintiff is concerned, precisely as' if the assignment in' question were gratuitous, and executed by Strauss, who was not liable to the plaintiff, to pay first the debts due by him jointly with the defendant, Hussbaum, and secondly those due by both separately. There being no obligation by Strauss to pay the plaintiff, the latter is in no better condition by reducing his debt to judgment, than if it had remained at large.
The first question that presents itself is, whether the Supreme Court had jurisdiction to accept the resignation of the defendant Allerton, as trustee, and discharge him from his duties and all liability to account to the plaintiff as cestui que trust under the assignment in question. By the original provision of the Revised Statutes of 1830, (1 R. S. 730, § 69,) the court of chancery was authorized to accept the resignation of a trustee, upon his petition merely, and discharge him from the trust. It was required, also, to establish regulations for the purpose, and determine the terms upon which such resignation should be accepted, having reference to the rights and interests of the persons interested in the execution of such trust. The court of chancery had no such power previously, unless by consent of all parties. (Matter of Van Wyck, 1 Barb. Ch. 565. Matter of Wadsworth, 2 id. 381.) The trustees, by making such application, virtually surrendered the administration of his trust to such court, (see 2 Spence, Eq. Jur. 918,) and deprived the cestius que trust of the power of proceeding against him adversely, until such application was disposed of. (Groshen v. Lyon, 16 Barb. 461.) The better practice sanctioned in such cases, seems to be to order a reference to inquire into the facts and circumstances under which the resignation is offered. (Matter of Miller, 15 Abb. Pr. 277.) But as to the statutory form of proceeding by petition, without notice to any one, it does not necessarily require a litigation inter partes ; the court which acquires jurisdiction can exercise it in any mode it thinks proper, provided it does not transgress its limits; and when exercised, it precludes all the world. It would undoubtedly not follow, that every provision in an order *559 discharging a trustee must he valid, because the court has power to accept his resignation; (Matter of Crossman, 20 How. 350;) but any exercise of such power within such jurisdiction, however indiscreet, cannot be corrected in a collateral proceeding, because it does not, by such indiscretion, become void. Where no trustee remains vested with the legal estate, by the discharge of the petitioner, it would seem to be an incomplete exercise of power to leave the subject of the trust without a legal, owner ; but such power of appointment is the subject of a separate provision in the statute just cited. (2 R. S. 730, § 71.) There is nothing to prevent a court having the power to appoint trustees from appointing the original creators of the trust as such. There could have been, therefore, no obstacle, in this case, to the appointment of either Strauss or the defendant Nussbaum, or both, trustees to carry out the trusts of the assignment; it was a matter entirely in the discretion of the court. The Supreme Court has, of course, succeeded to all the authority of the court of chancery in regard to matters of this kind. How far Strauss and Nussbaum became such trustees in place of the defendant Allerton, by the order of the Supreme Court' directing the latter to transfer to the former any unconverted property and the proceeds of any sold, it is perhaps not necessary now to discuss. Clearly, the property itself would not thereby become freed from the trusts. The Supreme Court undoubtedly ordered Allerton to deliver the custody and title to all the property in his hands to the assignors, either as trustees, or else preparatory to the appointment of new trustees. Whether that was or not an indiscreet exercise of authority, it cannot be overhauled in this action, collaterally. It the acceptance of Allerton’s resignation was within the jurisdiction of the court, and completed, he ceased forthwith to have any control over the property, and was not bound to administer the trust any further for the benefit of the plaintiff, or any other person. If the property was left in his hands until a successor was appointed, he was bound to deliver it over to such successor immediately on his appointment. It, therefore, results that Allerton is not responsible to the plain *560 tiff for- any property in His' hands when he was discharged, unless the order of the Supremé Court is to be entirely disregarded. ' If it was obtained improperly, or on false suggestions, the remedy of the plaintiff is by an application to that court to set it aside, where the merits of the whole matter can be inquired into. If this' action had been commenced while such application was pending undetermined, under the "authority of the case of Groshon v. Lyon, already referred to, (ubi sup.) this court would have' been bound to stay proceedings in it. I, therefore, fully concur with the learned referee, in this case, in the opinion, that without regard to the effect of the direction in the order of the Supreme Court to restore the property to the assignors, it discharged the defendant Allerton from all liability as trustee, even" if it left the property in hi's hands, to become subject to ;the original trusts, in the hands of his successor. The remedy of the plaintiff was to have applied to the Supreme Court, to appoint a successor to Allerton, (if Nussbaum and Strauss were not made so by such order,) and through him to.have compelled Allerton to deliver over to him the property in his hands. It certainly would be unjust, in any event, to order the plaintiff’s debt to be paid in full,without any allegation or proof respecting the existence of any other creditors of the assignors entitled to an equal sharé. If this were an action for an accounting, all the cestius que trust should be parties, or théir non-existénce should be alleged and proved. •
I think it, however, extremely doubtful, whether, even if the order of the Supreme Court were disregarded, and the defendant Allerton were still a trustee, he could be made .responsible to the -plaintiff for the property handed over to the assignors. The plaintiff had no right in the subject matter of the assignment until the. partnership creditors were satisfied. So long as the property- assigned was not sufficient to pay the preferred debts,- he had no claim. If by any means they were discharged, of course he became interested jointly with other postponed creditors of Nussbaum & Strauss. This operated to relieve such assets from all claim by them, so as to make the plain *561 tiff a cestui que trust of what remained. It is to be recollected, however, that part of the agreement of compromise was that the assignment was to be surrendered and canceled ; if that was not done, part of the consideration for the .agreement to discharge failed, and the creditors in question had a right to insist on the full amount of their debts ; in other words, if the plaintiff is entitled to any benefit from the discharge of the preferred debts he is bound to ratify the stipulation which discharged them. The effect of a surrender or cancelment of the assignment, as it was termed in each agreement, was to revest the assignors with the ownership of the assigned property ; for that and their discharge from indebtedness, they gave their notes with new security therefor. Such assignors, and particularly Strauss, were under no obligation to the plaintiff, so far as the property assigned was concerned, to pay their partnership debts off out of other resources, so as to let the plaintiff come in and claim it. There was no legal restriction upon the right of such assignees to buy the assigned assets, except that the possession of them after the assignment might be a badge of fraud in regard to it, of which no complaint is made; the connection, therefore, of the transfer back of such assets, with a discharge of their indebtedness where there was the additional consideration of new notes and security therefor, did not invalidate either. If the partnership creditors chose simultaneously to receive in place of the proceeds of the assigned assets, notes of the assignors, which would in part be a continuation of a part of the same indebtedness, and discharge the latter only from the rest of it, I know no principle of law to prevent them. They were substantially the equitable owners of such assets to the extent of their claims, and could have taken them at their fair value in satisfaction of a similar amount of such claims, and the plaintiff had no right to interfere. I am at a loss to perceive why they would not be entitled to take them, or consent to their destination or to their transfer to any third person, provided they agreed to extinguish as much of their claims as was equal to their value.
*562 In the argument presented on behalf of the plaintiff, the discharge of the partnership debts is separated from the transfer by the property, as having previously occurred, instead of being part of one transaction, and simultaneous with, and forming part of, mutual considerations. There would have been no difficulty in their arriving at the same result more circuitously ; namely, by the partnership creditors taking all the assets in satisfaction of their debts, and selling part of them to the assignors for their notes, duly secured, which was exactly what the agreement in question accomplished. The plaintiff would have no right in such case to interfere, and does not acquire it by the same result being reached directly.
The partnership creditors and assignors could by no means which they could resort to destroy or cancel the assignment, so far as rights of any other persons were concerned. The purport, therefore, of surrendering or canceling the assignment must, by the agreement between them, be understood from the whole agreement as meaning nothing more than surrendering the assigned property, which was subsequently carried out, and was sanctioned by authority of the Supreme Court. It may not have been the most felicitous expression they could have used to express such meaning, but such purpose being legal, while the literal interpretation would make the agreement illegal, the former is to be preferred.
The covenant contained in the assignment, by the defendant Allerton, to discharge the trusts contained in it, was not to the plaintiff, and did not enable him to bring any action at law upon it. I am also at a loss to conceive of any mode of reasoning by which the power of the Supreme Court to accept the resignation of a trustee who is an assignee of an insolvent debtor can be superseded impliedly by the powers of a county judge to decree upon petition an accounting and distribution of assets, and prosecution of an assignee’s bond under the statute of 1860. (Laws of 1860, p. 596, §§ 4, 5.)
I, therefore, am of opinion that the judgment appealed from should be affirmed, with costs.